**J.B. TWOMEY LAW**
J.B. Twomey [SBN 294206]
JB@JBTwomeyLaw.com
7056 Archibald Street, Suite 102-452
Corona, California 92880
Telephone: (310) 980-6357
Facsimile: (818) 937-6897

**JAIN LAW OFFICES, P.C.**
Kunal Jain, SBN 296642
Kunal@JainLawOffices.com
James L. Hanger III, SBN 293416
James@JainLawOffices.com
10866 Wilshire Blvd, STE 400-#777
Los Angeles, CA 90024
Business: (310)-957-2214
Facsimile: (424)-313-7123

Attorneys for Plaintiff
TRAVON ATTISON

MOLLIE M. BURKS (SBN: 222112)
mburks@grsm.com
JOSEPH A. GOVEA (SBN: 319683)
jgovea@grsm.com
GORDON REES SCULLY
MANSUKHANI, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendant
Whiting Door Manufacturing Corp.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVON ATTISON, an individual, on behalf of himself, other current and former aggrieved employees, and the State of California, as a private attorneys general,<br><br>　　　　Plaintiff,<br>　vs.<br>WHITING DOOR MANUFACTURING CORP., a New York corporation; and DOES 1 through 25, Inclusive,<br><br>　　　　Defendants. | Case No.: 5:20-cv-00012-JGB-KK<br>**Honorable Judge Jesus G. Bernal**<br><br>JOINT STIPULATION AND REQUEST FOR APPROVAL OF SETTLEMENT OF PAGA CLAIMS AND DISMISSING ACTION WITH PREJUDICE |

Plaintiff Travon Attison ("Plaintiff") and Defendant Whiting Door Manufacturing Corp. ("Defendant") (collectively the "Parties") have reached a settlement that resolves this matter in its entirety. The terms of the settlement are set forth in the Joint Stipulation of PAGA Settlement and Release ("Settlement Agreement") which is attached to the Declaration of Kunal Jain, Esq. ("Jain Decl.") as **Exhibit "1."**

By and through this Stipulation, the Parties present this settlement, which involves the release of claims under the California Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, et seq. ("PAGA"), to the Court for approval. Accordingly, the Parties stipulate to the following:

## BACKGROUND

1. Plaintiff filed an individual and representative PAGA action against Defendant December 02, 2019, in the Superior Court of California, County of San Bernadino after complying with the administrative requirements set forth in Cal. Lab. § 2699.3. Jain Decl. ¶ 3; **Exhibit "2"** to Jain Decl. Defendant later removed this matter to this Court. ECF No. 8.

2. At the outset of the litigation, the Parties attended a mediation before Mediator Maryam Zadeh, but were unsuccessful in reaching a resolution. However, the Parties engaged in a voluntary disclosure of documents and information through which they ascertained the number of aggrieved employees and the number of pay periods worked during the applicable statutory period to ascertain the potential value of Plaintiff's PAGA claims. Jain Decl. ¶ 6.

3. Subsequently, the Parties engaged in earnest litigation, filing motions, conducting discovery, and ultimately preparation for trial as to damages regarding claims adjudicated in Plaintiff's Motion for Summary Adjudication and trial on the merits as to all other of Plaintiff's claims. *Id*. at ¶ 7.

4. The Parties then entered into arm's length negotiation via a second mediation with respected mediator, Tripper Ortman. *Id*. at ¶ 8. While the Parties were still unable to reach a resolution on the day of mediation, they continued pursuing negotiations through Mr. Ortman. *Id*. at ¶¶ 8-9.

5. Finally, the parties reached a resolution as to all claims. *Id*. at ¶ 9. Plaintiff asserts that the maximum exposure related to the PAGA claims is $1,650,000.00. *Id*. at ¶ 12. The amount of the Parties' PAGA settlement is $700,000.00, which represents nearly half that amount (based on an average of 50 aggrieved employees per pay period who worked an aggregate 10,900 weekly pay periods (from August 12, 2018 through October 15, 2022, the date this Court ordered this instant stipulation be filed[1]) at the rate of $50.00 or $100.00 for each violation). *Id*. *See also* Exhibit 1.

6. On September 30, 2022 and October 10, 2022, the Parties executed a Settlement Agreement. *Id*.

7. On October 13, 2022 the proposed agreement was submitted to the LWDA as required under Cal. Lab. Code § 2699(1)(2) prior to it being submitted to the court. *Id*. at 11; Exhibit 3.

8. Under California law, the State of California may assess and collect civil penalties from employers for violations of certain provisions of the Labor Code. *See* Cal. Lab. Code § 2699(a). However, under the PAGA, an "aggrieved employee" may act as a proxy or agent of the state's labor law enforcement agencies and bring a civil action to recover civil penalties "on behalf of himself or herself and other current or former employees" if the employee gives "written notice by online filing to the Labor Workforce Development Agency and by certified mail to the employer of the specific provisions of [the Labor Code] alleged to have been violated," and the State

---

[1] According to the Parties' Settlement Agreement, the specific number of pay periods to be included in the settlement continues through to ". . . the date that the Court enters an order approving this Settlement." (*See* Exh. 1, pg. 2, Section I.11.)

thereafter decides not to investigate, as was the case here. Cal. Lab. Code § 2699.3.

9. Cal. Lab. Code § 2699(l)(2) provides that the trial court shall "review and approve any settlement of any civil action filed pursuant to this part."

10. In *Abelar v. American Residential Services, L.L.C*, the court analyzed the following factors for approving a settlement of PAGA claims, each of which weigh in favor of approval of the Settlement Agreement in this case as well: (1) notice to the LWDA of the proposed settlement; (2) adequacy of relief, given the strength of the case and the possibility of further litigation; (3) extent of discovery and the state of the proceedings; (4) adequate representative; (5) experience and views of counsel; (6) arms-length negotiations and absence of evidence of collusion; (7) equitable treatment of aggrieved employees; and (8) public interest factors for a PAGA settlement. *Abelar v. American Residential Services, L.L.C.*, Case No. 5:19-cv-00021-JGB-SHK, 2019 WL 6054607, at *3-5 (C.D. Cal. Nov. 14, 2019).

11. The settlement was reached following arm's length negotiations between experienced counsel after multiple private mediation sessions, and thereafter, ongoing negotiations with a highly experienced mediator. Jain Decl. ¶¶ 5-9.

12. Based upon their experience litigating wage and hour and representative actions, including attaining numerous court approval of PAGA settlements, counsel for Plaintiff believe the Parties' settlement at issue here is fair and reasonable and warrants approval by the Court. *Id*. at ¶¶ 12-15, 19-24. An explanation as to the facts, circumstances, and legal authority regarding why this settlement is fair and meaningful is provided in further detail below.

13. The Parties understand, acknowledge, and agree that this settlement constitutes a compromise and release of Plaintiff's PAGA Representative Claims, and that it is the desire and intention of the Parties to affect a final and complete resolution of the Action, including the PAGA Representative

Claims, against Defendant. The Parties further acknowledge that this Settlement Agreement is a compromise of disputed claims and that nothing in this Settlement Agreement shall be construed as an admission of liability by Defendant. *Id*. at Exhibit 1.

14. The Parties agree that there are legitimate risks with Plaintiff pursuing his PAGA claims to a trial on damages for the adjudicated claims in Plaintiff's Motion for Summary Adjudication and a trial on the merits for Plaintiff's other claims since an expert has yet to be retained and precise resolution of damages may require expert testimony. *Id*. at ¶ 25. In the absence of expert testimony, the value of Plaintiff's PAGA claims could diminish due to the current sampling of records in his possession. In addition, the records absent from Plaintiff's sampling could evidence no perceivable violations, or perceivable violations at rate less than the sample, introducing a risk of diminished value to Plaintiff's claims. Moreover, issues related to meal and rest periods remain outstanding. Such claims may present individualized issues that would pose substantial risk of non-recovery to the represented employees. *Id*. *See Amiri v. Cox Communications California, LLC*, 272 F. Supp. 3d 1187, 1194 (C.D. Cal. 2017) (finding "Plaintiff's PAGA representative claim based on failure to provide meal and rest periods…requires numerous individualized determinations that make his claims unmanageable").

15. The parties further agree that there are legitimate risks to recovery of all matters since Plaintiff's availability at trial is in question given the fact that he has been subject to other legal matters that may prevent his attendance without significant, skilled and costly efforts. *Id*.

16. The Parties also agree that there are legitimate risks to recovery of PAGA penalties, as the Court has ultimate discretion to reduce penalties pursuant to Cal. Lab. Code § 2699(e)(2). *e, e.g., Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030 (N.D. Cal. 2016) (a significant reduction in penalties was appropriate

in part because the employer did not "deliberately evad[e] a clear obligation to provide legally required pay and benefits to employees…"); *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (affirming the trial court's reduction of PAGA penalties to just $5.00 per pay period).

17. The Parties agree that the settlement amount is fair and adequate in achieving PAGA's objective. While "[a PAGA] action is … designed to protect the public and penalize the employer for past illegal conduct," a reviewing court must take into account the fact that settlement of a PAGA claim – like any settlement – involves a "compromise" that stops short of rendering findings of liability and damages. *Mendez v. Tween Brands, Inc.*, 2010 WL 2650571, *2 (E.D. Cal. July 1, 2010). Moreover, the court must not lose sight of the fact that "[u]nlike a class action seeking damages or injunctive relief for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777, *4 (N.D. Cal. April 2, 2010).

18. The Parties agree that this result is fair and reasonable, as settlements of PAGA claims impacting thousands of individuals have been found fair, adequate and reasonable, thus, approved for amounts far less than the payments in this case. *See Franco v. Ruiz Food Products, Inc.*, WL 5941801, *14 (E.D. Cal. November 27, 2012) ("Defendant has agreed to pay $10,000 as civil penalties pursuant to the PAGA…Of the $10,000, 75 percent ($7,500) will be paid to the State of California, and the remainder ($2,500) will benefit the class…The Court finds that the PAGA payment is set at a reasonable amount, and it shall be approved."); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, *7 (E.D. Cal. October 31, 2012) ("GTI agrees to allocate $10,000 to Plaintiffs' PAGA claims, and will pay $7,500 to the LWDA, and $2,500 to participating Class Members on a pro-rata

basis. This comports with settlement approval of PAGA awards in other cases…Therefore, the Court will approve the allocation of the Settlement to Plaintiffs' PAGA claim."); *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, *14 (E.D. Cal. June 11, 2012) ("Pursuant to the Settlement Agreement, the parties have agreed to pay $7,500 to the California Labor and Workforce Development Agency. … The Court finds that the PAGA Payment is set at a reasonable amount, and recommends that it be approved."); *Gong-Chun v. Aetna, Inc*., 2012 WL 2872788, *17 (E.D. Cal. July 11, 2012) ("Pursuant to the Settlement Agreement, Defendant has agreed to pay $15,000 to the California Labor and Workforce Development Agency….The Court finds the PAGA payment is set at a reasonable amount, and it shall be approved.").

## THE SETTLEMENT TERMS

19. The Settlement Agreement defines "Aggrieved Employees" as "all hourly non-exempt employees who worked for Defendant in California from August 12, 2018, to the present, and continuing through the date that the Court enters an order approving this Settlement." *See* Exh. 1 to Jain Decl., pg. 1, Section I.2.

20. The Settlement Agreement calls for a payment of $700,000.00 inclusive of all attorneys' fees and costs to be deposited with the Settlement Administrator within 30 calendar days of the Court's approval of the Effective Date. *Id*. at pg. 3, Section III.1. The "'Effective Date' means the date on which all of the following have occurred: (i) the Court has entered a Final Judgment approving this Settlement; and (ii) Plaintiff's counsels have executed and returned a Waiver of Appeal rights; and (iii) the time to appeal or seek permission to appeal or seek other judicial review of the Final Judgment approving the Settlement has expired with no appeal or other judicial review having been taken or sought." *Id*. at pg. 1, Section I.5. Out of the total settlement amount, Defendant does not oppose up to $280,000.00

being allocated to Plaintiff's counsel as attorneys' fees, subject to the Court's approval, and $34,986.000 being reimbursed to Plaintiff's counsel for actual costs incurred pursuing this action. *Id*. at pg. 3, Section III.2.a; see also Jain Decl. ¶ 38  Up to $4,500.00 shall be allocated towards settlement administration.  (*Id*. at pg. 3, Section III.2.b.)  The PAGA payment of at least $380,514.00 shall be distributed as follows: 75% ($285,385.50) to the State of California via the LWDA and the remainder ($95,128.50) amongst the aggrieved employees.  (*Id*. at pg. 3, Section III.3.)  Should the court order the fees, costs, or settlement administration amounts to be less than requested, then the difference will be added to the PAGA payment to be included in the distribution between the LWDA and the aggrieved employees.  *Id*. at pg. 3, Section III.2.b.

21. Within thirty (30) calendar days after the Effective Date, Defendant will provide the Settlement Administrator with contact information for the Aggrieved Employees. Defendant will, in good faith, compile from their records a list of Aggrieved Employees that will be in a computer-readable format, such as a Microsoft Excel spreadsheet, and will include each Aggrieved Employee's full name, last known mailing address, last known telephone number, number of applicable pay periods during the PAGA Period, and Social Security numbers or tax identification numbers. Because Social Security or tax identification numbers are included in the list, the Settlement Administrator will maintain the list securely and in confidence, and access will be limited to those with a need to use the list as part of the administration of the Settlement. Within ten (10) business days of receiving the Aggrieved Employees' information from Defendant, the Settlement Administrator will circulate to counsel for both Parties an anonymized spreadsheet containing the Individual Settlement Payments to each Aggrieved Employee and the data used to calculate said payments. The Settlement Administrator will obtain approval from all counsel for the

Parties of the calculations before mailing Individual Settlement Payments. *Id*. at pg. 5, Section IV.2.

22. The settlement administrator will issue appropriate 1099 forms and make payments. The Settlement administrator will make all efforts to locate the mailing address for any employee whose settlement check comes back as returned. *Id*. at pg. 5, Section IV.3.

23. The parties have agreed to ILYM Group to manage the administration of the settlement payment and respectfully request the Court to approve the same. *Id*. at pg. 5, Section IV.1.

24. Reasonable attorneys' fees and costs are awarded in PAGA actions. Cal. Lab. Code § 2699(g)(1); Hamilton v. Juul Labs, Inc., 2021 WL 5331451, *12-13 (N.D. Cal. 2021) (finding fees reasonable based on novelty of PAGA claims, Ninth Circuit 25% benchmark, and 1.25 multiplier to lodestar); *Patel v. Nike Retail Services, Inc*., 2019 WL 2029061, * 4 (N.D. Cal. May 8, 2019) (finding fees reasonable where, although they represented the largest amount in the PAGA settlement, they represented 18% of the lodestar and litigation included substantial discovery, motion practice, and mediation efforts over five years).

25. Plaintiff's lodestar calculation is based on Plaintiff's counsel having nearly ten years experience litigating, matters, including wage and hour actions, PAGA claims, with a reasonable billing rate of $650.00 per hour. Jain. Decl. ¶¶ 14-16, 30-33. *See also* Exhibit 4 to Jain Decl. (Laffey Matrix). Counsel for Plaintiff has expended over 500 hours during the course the preceding three years litigating this matter. Jain. Decl.¶¶ 29, 34-35. In particular, the Parties have engaged in the preparation and analysis of damages for multiple mediation sessions with multiple mediators, engaged in formal and informal discovery, including discovery motion work, prepared for and conducted depositions, defended various depositions, Plaintiff prepared and filed a successful motion for summary adjudication, filed and responded to multiple

other motions by Defendant, prepared and served discovery requests, responded to discovery issues, defended and take depositions, and engaged in preparation for trial, including preparation of jury instructions, and preparation of witness and document lists in anticipation for trial. *Id*. at ¶¶ 3, 5-9, 11-12, 20, 34, 35. This in addition to various amounts or research related to new and relevant case law, and other client management related efforts. *Id*. at ¶ 34. Plaintiff's request for attorneys' fees to be paid up to Forty-percent (40%) of the Gross Settlement Amount is 0.86 the lodestar calculation (Requested $280,000.00 / Lodestar $325,000.00), making it less than the 1.25 standard, thus, reasonable and appropriate. *Id*. at ¶¶ 27, 29.

26. While more commonly used in class actions settlements, when considering a percentage of fund approach, courts often examine several factors including, the extent to which class counsel achieved the results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burden class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis. *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation mark omitted). Moreover, The Ninth Circuit has allowed courts to award attorney's fees using the percentage method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth,* 654 F.3d at 942.

27. In current matter, *the result obtained by Plaintiff is exceptional.* The $700,000.00 settlement, distributed amongst the average of 50 employees per pay period results in an average of $14,000.00 per employee from the Gross Settlement ($700,000.00 / 50 average employees) and an average of $1,902.57 per employee from the Net Settlement ($95,128.50 / 50 average employees). Counsel reviewed more than 100 wage and hour cases that

were approved for settlement by this Court or in this District and was unable to find a single case resulting in a higher value per employee than the result obtained by the Parties' instant settlement now seeking approval by this Court. Jain. Decl. ¶ 20. Moreover, approval of this settlement results in the State of California recovering no less than $285,385.50, an amount that is in line or exceeds recovery provided in other PAGA cases. *Id*. Further, this settlement result is also exceptional in that it captures nearly half of the potential PAGA exposure. While the court need not use a percentage method in a PAGA matter, should the court consider the same, the Plaintiff believes this exceptional result justifies the higher percentage of Attorneys' fees respectfully requested by Plaintiff.

28. In addition, while Defendant does not admit liability of any kind, Defendant provides a declaration from its Human Resources Director indicating that Defendant has as of February 2021, "eliminated its grace period policy at its facility in California." Declaration of Elizabeth Budzynski ¶¶ 3-5. Further, "employees are paid to the minute for all time worked." *Id*. As such, this litigation, and pending agreement, not only results in an exceptional monetary value to Defendant's employees and the State of California, but also ensures that Defendant employer is aware of and auditing its actions for legal compliance. Plaintiff believes this valuable non-monetary result also justifies the higher percentage of Attorneys' fees respectfully requested by Plaintiff.

29. Plaintiff's counsel run small firms (J.B. Twomey Law operates as a solo firm, while Jain Law Offices, P.C. consists of two members). Jain Decl. ¶ 27. The risk of maintaining a three-year litigation against the large and respected firm of Gordon Reese Scully Mansukhani, LLP and it's up to five (5) assigned counsel on this matter inevitably resulted in Plaintiff's counsel rejecting other work. *Id*. Plaintiff believes these risks and forfeitures justify the higher percentage of Attorneys' fees respectfully requested by Plaintiff.

30. Plaintiff's counsel litigated this case on a contingency basis, thus, assuming further risk. *Id*. Plaintiff believes this further justifies the higher percentage of Attorneys' fees respectfully requested by Plaintiff.

31. Finally, Plaintiff's current state of personal affairs outside this matter significantly impact his ability to even appear at trial. *Id*. at ¶ 23. The fact that he may not be available represents a substantial issue which could have resulted in no, or significantly reduced, recovery. Despite this issue, Plaintiff's counsel was able to achieve a remarkable result for Plaintiff[2], the employees making up the PAGA class and the State of California. In view of this risk and the ultimate settlement now seeking approval, this Court should award the higher percentage of attorneys' fees respectfully requested.

32. Given that Plaintiff is seeking an award that is .86 of the lodestar calculation, and in view of the exceptional result achieved in this PAGA only litigation, the risk that Plaintiff would not even be available to appear at trial, the risk to Plaintiff's counsel in taking on the litigation, the contingent nature of the work, and the changes made by Defendant in their employment practice, Plaintiff believes the $280,000.00 attorneys' fees request is reasonable and respectfully asks the Court to approve the same.

33. In accordance with *Arias v. Superior Court*, a judgment in "a representative action brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004 … is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding," which the Order Granting Approval of Settlement and Dismissing Action ("Final Order") shall so reflect. *Arias v. Superior Court*, 46 Cal. 4th 969, 985 (2009). The Final Order shall not bind nor release the aggrieved employees of any individual

---

[2] Plaintiff has settled his individual claims separate and apart from the PAGA settlement and it represents Plaintiff's fair demand based on his perceived damages. Jain Decl. ¶ 23.

11
JOINT STIPULATION TO APPROVE PAGA SETTLEMENT AND DISMISS ENTIRE ACTION

claims. However, in accordance with *Arias*, the Final Order shall be binding on the aggrieved employees as to the Released Claims.

34. Upon the Court's entry of the Final Order, the Parties will: (1) be bound by the terms and conditions of the Settlement Agreement; and (2) be deemed to have waived all objections and oppositions to the fairness, reasonableness, and adequacy of the settlement and the Court's Final Order.

35. Therefore, the Parties request that the Court approve the proposed PAGA Settlement as follows: A gross settlement of $700,000.00 out of which $285,385.50 shall be allocated to the state of California via the LWDA, $95,128.50 shall be allocated to the aggrieved employees, $4,500.00 shall be allocated to ILYM Group as the PAGA administrator, $280,000.00 shall be allocated to Plaintiff's counsel for attorneys' fees and $34,986.00 shall be allocated to Plaintiff's counsel for reimbursement of actual costs.

Dated: 10/4/2022

Respectfully submitted,
**Jain Law Offices, P.C.**

/s/KunalJain
Kunal Jain
Attorneys for Plaintiff,
Travon Attison

Dated: 10/4/2022

Respectfully submitted,
**Gordon, Reese, Scully, Mansukhani, LLP**

/s/ SatSangKhalsa

Attorneys for Defendant,
Whiting Door Manufacturing Corp.